UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WILDLIFE FEDERATION, and<br>FLORIDA WILDLIFE FEDERATION, and<br><br>    Plaintiffs<br><br>v.<br><br>FRANCIS J. HARVEY, in his official capacity as<br>Acting Secretary of the U.S. Department of the<br>Army<br>101 Army Pentagon<br>Washington, DC 20310<br><br>    Defendant | No. 1:05CV01671 (CKK) |

**FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO TRANSFER VENUE**

**I.  INTRODUCTION**

Federal Defendant hereby moves to transfer this suit to the United States District Court for the Southern District of Florida.  This case alleges that the U.S. Army Corps of Engineers' ("Corps") management of Lake Okeechobee in South-Central Florida is harming the endangered snail kite, which occurs in Florida and not in the District of Columbia.  In addition, there are various other cases pending in the Southern District of Florida challenging the Corps' management of the Central and Southern Florida Project, which includes Lake Okeechobee.  As outlined below, the interests of justice will best be served by transferring this action to the Southern District of Florida.

## II.  BACKGROUND

A.   <u>Factual Background</u>

Plaintiffs in this action allege that the U.S. Army Corps of Engineers' management of Lake Okeechobee has adversely affected the endangered snail kite and its designated critical habitat.  Lake Okeechobee is located in the central part of the Florida peninsula, 30 miles west of the Atlantic coast and 60 miles east of the Gulf of Mexico.  Lake Okeechobee is a broad, shallow lake with a surface size of approximately 730 square miles and is the principal natural reservoir in Southern Florida.  Lake Okeechobee provides, <u>inter alia</u>, drinking water for urban areas, irrigation water for the surrounding agricultural lands, recharge for the underlying aquifer, freshwater for the Everglades, habitat for fish and waterfowl, storage of water for flood control, and recreational opportunities.  In short, Lake Okeechobee is the center of South Florida's regional water supply system.

In the historic Everglades, water flowed south in a broad sheet from Lake Okeechobee to Florida Bay.  Local efforts to stop water from overtopping the southern rim of the Lake, including excavation of canals and the building of a dike to hold the water, began in the early part of this century.  During the 1920's, two hurricanes caused the lake to overflow and flood the surrounding areas, resulting in the loss of thousands of lives.  Thereafter, the federal government became involved in managing the Lake water to achieve navigation and flood control purposes that would enable human habitation of the area.

Plaintiffs' Complaint focuses generally on federal government actions to manage Lake water since 1978.  <u>See</u> Complaint at Para. 3, 16-23.  However, the Corps' water management actions with respect to Lake Okeechobee date back to the 1930's.  In 1930, Congress directed the

Corps to manage the water levels and provide flood protection by constructing the Herbert Hoover Dike. See Rivers and Harbors Act of 1930, ch. 847, Pub. L. No. 71-520, 46 Stat. 918, 925. That Act also directed the Corps to install hurricane gate structures at the junctures of the canals with the Lake, allowing for water to flow to and from the Lake as needed. Id.

In 1948, Congress authorized the Corps to construct the Central and Southern Florida Project for Flood Control and Other Purposes ("C&SF Project")–a massive system of levees, canals, and pump stations – to manage water in South Florida, including the Everglades. Flood Control Act of 1948, ch. 771, § 203, Pub. L. No. 80-858, 62 Stat. 1175, 1176 (1948). The C&SF Project divides portions of the historic Everglades into three sections. The southern third of the original Everglades is located within the boundaries of Everglades National Park. The northern third, near Lake Okeechobee, was drained and is now known as the Everglades Agricultural Area. The middle third was compartmentalized by levees and canals into the Water Conservation Areas. The C&SF Project promotes the multiple objectives of flood control, navigation, drainage, preservation of fish and wildlife, and control of regional groundwater and salinity in South Florida. The South Florida Water Management District ("SFWMD"), with its main office in West Palm Beach, Florida, is the local sponsor for the C&SF Project. See South Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians, 541 U.S. 95, 100 (2004).

The Corps manages water levels in Lake Okeechobee according to regulation schedules that adjust water levels to meet various project purposes. The Corps adopted the current regulation schedule in 2000. The Corps has initiated a study to consider changing the regulation schedule pursuant to 33 C.F.R § 222.5. To this end, Corps has issued a scoping letter, pursuant to National Environmental Policy Act regulations at 40 C.F.R. § 1501.7, to solicit participation,

views, and comments from interested parties on resources, study objectives, and important issues within the study area.  See http://planning.saj.usace.army.mil/envdocs_E_L/Hendry/Lake_O/ PDF-files/ScopingLetter.pdf.  The Corps anticipates pursuing "extensive" Endangered Species Act consultation with the U.S. Fish and Wildlife Service to assess possible impacts on threatened and endangered species while considering changes to the regulation schedule.  See Corps consultation letter for the Class Limit Adjustment ("CLA") Environmental Assessment ("EA"), dated December 2, 2004 (filed herewith as Def. Exhibit 1).

**B.**     **Standard for Granting Motion to Transfer**

This Court has authority to transfer this case pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong -- however brought in a court -- presents issues . . . that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court."  Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960).

The decision whether to transfer rests in the sound discretion of the district court[1] and should be exercised in light of all the circumstances of a case.  See e.g., Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981); Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180,

---

[1] This discretion is limited by the requirement that the transfer may be only to another "district or division where [the case] might have been brought."  28 U.S.C. § 1404(a).  As noted below, Plaintiffs could have filed this action in the Southern District of Florida pursuant to 28 U.S.C. §1391(e), so this requirement has been met.

184-85 (1952); Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996) (§ 1404(a) vests "'discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness.'") (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).  The court weighs several factors in deciding a motion for change of venue under this provision, including the convenience of the parties and witnesses, access to proof, calendar congestion, where relevant events took place, and the interests of justice.  E.g., Car-Freshner Corp. v. Auto-Aid Mfg. Corp., 438 F. Supp. 82, 85 (N.D.N.Y. 1977); see also Hawksbill Sea Turtle v. FEMA, 939 F. Supp. 1, 3-5 (D.D.C. 1996).

### III.  ARGUMENT

**A.   The District Court for the Southern District of Florida is a Forum in Which The D.C. Action Could Have Been Brought.**

The "threshold consideration" in determining the appropriateness of transfer under § 1404(a) is whether the action "could have been brought" in the transferee district.  See Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (transfer power is expressly limited by clause restricting transfer to those districts in which the action "could have been brought"), superceded by statute on other grounds, as stated in Ross. v. Colo. Outward Bound Sch., 822 F.2d 1524 (10th Cir. 1987).  Thus, the transferee district must have jurisdiction over the case.  Hoffman v. Blaski, 363 U.S. 335, 343 (1960).  Here, Plaintiffs base their claims on federal question jurisdiction and the grant of jurisdiction under the Endangered Species Act, see Complaint at ¶ 5.  The U.S. District Court for the Southern District of Florida would have subject-matter jurisdiction over such claims, so the only relevant question is whether venue is proper in the transferee district.  Id.; see Martin-Trigona v. Meister, 668 F. Supp. 1, 4 (D. D.C. 1987).

Pursuant to § 1391(e), venue is proper in the "judicial district in which. . . a substantial

part of the events or omissions giving rise to the claim occurred. . . ." 28 U.S.C. §1391(e)(2). However, "there may be several districts that qualify as a situs of such 'substantial' activities." David D. Siegel, Commentary on 1988 and 1990 Revisions of Section 1391, 28 U.S.C.A. § 1391 (1993) at 9; see 15 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters §3802.1 at 4, 6-7 n.9 (2d ed. 1986 (2005 Supp.)) (the language of § 1391(e)(2) makes "it clear that there may be more than one district in which a claim may be thought to have arisen and in which venue should be proper").

Plaintiffs' claims in this action all relate to the Corps' water management actions with respect to Lake Okeechobee, which is largely in the Southern District of Florida.[2] The agency decision-makers and members of Plaintiffs' organizations are located in Florida. These facts compel the conclusion that this case could have been brought in the Southern District of Florida. Consequently, venue in the Southern District of Florida is proper under 28 U.S.C. § 1391(e)(2), and as a result, this case could have been brought there.

**B.     Both the Interests of Justice and the Convenience of the Parties and Possible Witnesses Will Be Served By Transferring This Case.**

    **1.     The Interests of Justice Will Be Best Served By Transferring This Case.**

The strongest reason to transfer this action to the Southern District of Florida is that the interests of justice will best be advanced by such a transfer. The interests of justice are primarily defined as the prevention of unnecessary expense to the public and duplicative use of judicial

---

[2] Lake Okeechobee lies largely within Okeechobee, Martin, and Palm Beach Counties, Florida. The United States District Court for the Southern District of Florida has jurisdiction over claims arising in these counties. S.D. Fla. L.R. 3.4.D; 28 U.S.C. § 89(c); Global Satellite Commc'n Co. v. Starmill U.K. Ltd., 378 F.3d 1269-1271-2 (11th Cir. 2004). Portions of Lake Okeechobee extend into Glades and Hendry Counties, which are within the Middle District of Florida.

6

resources.  See Cont'l Grain, 364 U.S. at 26 & 27.  In its determination of the interests of justice, the D.C. Circuit inquires as to "'whether the impact of the litigation is local to one region. . . .'" Oil, Chem. & Atomic Workers Local Union No. 6-148 v. N.L.R.B., 694 F.2d 1289, 1300 (D.C. Cir. 1982) (quoting Liquor Salesmen's Union Local 2 v. NLRB, 664 F.2d 1200, 1205 (D.C. Cir. 1981)); Citizen Advocates for Responsible Expansion v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983) (justice requires that localized controversies be decided at home).  The interests of justice are promoted when a localized controversy such as this one is resolved in the region that it impacts.  See Oil, Chem. & Atomic Workers, 694 F.2d 1289.  As the Supreme Court has noted:

> In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.  There is a local interest in having localized controversies decided at home.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947) (emphasis added).

It is not atypical for cases in this district which are brought under the Endangered Species Act ("ESA") or other complex environmental statutes to be transferred to the local district if a party to the litigation so requests.  For example, in Hawksbill Sea Turtle, 939 F. Supp. 1, the Court transferred an ESA challenge concerning a Virgin Islands housing project to the District of the Virgin Islands.  The Court reasoned that "[t]he housing project, and the habitat of the sea turtle and tree boa are in the Virgin Islands, and the alleged violation of the environmental laws took place there."  Id. at 3.  In Northwest Forest Resource Council v. Babbitt, No. 93-1579 JHG, 1994 WL 908586 (D.D.C. Apr. 13, 1994), the Court transferred a challenge to the listing of the marbled murrelet under the ESA from the District of Columbia to the Western District of Washington where much of the bird's habitat is found.  The court noted that "marbled murrelets do not inhabit land or water in--or anywhere near--the District of Columbia."  Id. at *4.

Likewise, in Trout Unlimited, 944 F. Supp. at 20, the Court transferred an action brought by environmental groups in the District of Columbia against the U.S. Forest Service regarding the granting of easements for the operation of a dam to the local District of Colorado where the dam would operate. The Court deferred "to the more compelling interest of the State of Colorado in having this localized controversy decided at home." Id. at 19.

Judge Roberts issued an order granting the United States' motion to transfer venue to the Southern District of Florida in a case challenging the Central and Southern Florida Comprehensive Plan, which regulates water resources in southern Florida, including parts of the Florida Everglades. Miccosukee Tribe of Indians v. United States, No. 99-2465 (D.D.C. filed December 28, 2000) (filed herewith as Def. Exhibit 2). The court noted that Plaintiffs failed to demonstrate any significant connection to the District of Columbia and that "the people of [southern Florida] have an interest in the dispute that far outweighs the interests of the citizens of this District." Id. at 14 - 15 (quoting Seariver Maritime Fin. Holdings v. Pena, 952 F. Supp. 9, 11 (D.D.C. 1997)).

In Kent County, Delaware v. Welsh, 02-0236 (D.D.C.) (E-filed order dated March 6, 2003) (filed herewith as Def. Exhibit 3), Judge Roberts granted a motion to transfer venue in a case challenging an Environmental Protection Agency ("EPA") decision to approve "Total Maximum Daily Loads" ("TMDLs") for the Murderkill River in Delaware. The court noted that "[t]he District of Columbia has little or no connection to the precipitating events at issue other than as the location of EPA headquarters." Id. at 5. As in the instant case, the decision at issue was made outside the District of Columbia. Id. at n. 1. The court noted that judges in Delaware might be more familiar with the river at issue and with the consent decree governing the

8

schedule for establishing TMDLs in Delaware.  Id. at 7.  The court concluded that "the interest of justice in deciding local controversies at home weighs heavily in favor of transfer to Delaware. . . ", because the case challenged "a decision made outside of this district by EPA that affects the citizens of Delaware."  Id. at 8.

      Most recently, in a factually similar case challenging a Corps decision to issue ten permits for the discharge of dredge and fill material into waters of the United States pursuant to the Clean Water Act, 33 U.S.C. § 1344, Judge Urbina granted the Federal Defendants' motion to transfer venue to the United States District Court for the Southern District of Florida.  Sierra Club v. Flowers, 276 F. Supp. 2d 62 (D.D.C. 2003).  The Corps permits challenged in that case authorize ten mining companies to conduct limerock mining on 5,409 acres of company-owned wetlands in Miami-Dade County, Florida.  The court held that the case could have been brought in the Southern District of Florida and the interests of justice favored transfer to that forum.  The court reasoned that "the plaintiffs' choice of forum merits little deference because the District of Columbia has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'"  Id. at 67 (quoting Wilderness Soc'y v. Babbitt, 104, F. Supp. 2d 10, 13 (D.D.C. 2000)).  Although the Federal Defendants maintained offices in the District of Columbia, there was a "lack of evidence that federal officials in this forum played 'an active or significant role' in the decision to issue the permits."  Id. (quoting Airport Working Group v. U.S. Dep't of Def., 226 F. Supp. 2d 227, 230 (D.D.C. 2002); Trout Unlimited, 944 F. Supp. at 18)).  "Federal officials in Florida, not the District of Columbia, signed the final record of decision authorizing the permits."  Id.  The court also reasoned that "the decision to issue the permits is a controversy local to Florida and is one in which Florida and its residents have a great interest."  Id. at 71.

Moreover, the court noted that "[t]he mining companies to whom the Corps issued the permits, and who now move to intervene in this action, are located in Florida."

In the instant case, Plaintiffs raise various claims under the ESA. In particular, Plaintiffs allege that the Corps' actions managing Lake Okeechobee have harmed the endangered Everglades snail kite. However, the disputed actions have no impact within the District of Columbia. The disputed actions have impact in Florida. Lake Okeechobee, the "liquid heart of Florida," is the second largest freshwater lake in the contiguous United States. See http://www.sfwmd.gov/site/index.php?id=16 (SFWMD website). The Lake Okeechobee schedule affects the St. Lucie and Caloosahatchee River estuaries where the lake discharges to tide to the East and West, urban drinking water supply, irrigation for agricultural canals, recharge of wellfields, habitat within and surrounding the lake, sportfishing and commercial fisheries, tourism, wading bird breeding and foraging, resident and migratory waterfowl, and endangered species as well as water available to the Everglades, all of significant local interest. See http://www.sfwmd.gov/site/index.php?id=482 (SFWMD website). As Plaintiffs' claims are regional in nature and specific to the Southern District of Florida, they should be transferred there.

Indeed, there are various cases already pending in the Southern District of Florida, which challenge other aspects of the Corps' management of the C&SF Project. For example, in Friends of the Everglades v. South Florida Water Management District, (S.D. Fla., No. 02-CV-80309 ), plaintiffs allege that a National Pollutant Discharge Elimination System ("NPDES") permit is required for water transfers through the S-2, S-3, and S-4 pumping stations at the southern end of Lake Okeechobee. In Miccosukee Tribe of Indians v. United States Army Corps of Engineers

10

(S.D. Fla., No. 02-22778), the Plaintiff Tribe alleges, inter alia, that the Corps' Interim Operational Plan ("IOP") to avoid jeopardy to the endangered Cape Sable seaside sparrow is resulting in unintended adverse impacts to the snail kite and its habitat.  Finally, in Sierra Club v. Flowers (S.D. Fla., No. 03-23427), which was transferred from D.C. as noted above, plaintiffs allege, inter alia, that 12 permits for the discharge of dredge and fill materials into waters of the United States will result in adverse impacts to the snail kite and its habitat.

Although Defendant bears the burden of demonstrating that transfer is appropriate under 28 U.S.C. § 1404(a), that burden is "substantially diminished" where, as here, "the connection between plaintiffs, the controversy and the chosen forum is attenuated." Citizen Advocates for Responsible Expansion, 561 F. Supp. at 1239 (citations omitted); Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991) (deference to plaintiff's choice of forum is "greatly diminished" when the events have little connection to the chosen forum).  See also Harris v. Republic Airlines, 699 F. Supp. 961, 963 (D.D.C. 1988) (deference overcome where plaintiff's choice of forum "has no factual nexus to the case"); Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 6 (D.D.C. 1996) ("deference is mitigated where the plaintiff's choice of forum has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter'") (citation omitted); Citizen Advocates for Responsible Expansion, 561 F. Supp. at 1239 (burden on moving party "is substantially diminished where, as here, transfer is sought to the forum where plaintiffs reside . . . and the connection between plaintiffs, the controversy and the chosen forum is attenuated."); Trout Unlimited, 944 F. Supp. at 17 (deference to plaintiff's choice of forum is reduced where the plaintiff's choice has "no meaningful ties to the controversy and no particular interest in the parties or subject matter.") (citations omitted); Hawksbill Sea Turtle,

939 F. Supp. at 3 (less deference owed to plaintiffs' choice of forum where it has insubstantial nexus with facts of case); Nw. Forest Res. Council, 1994 WL at *3 ("several decisions in this circuit suggest that [plaintiffs' choice of forum] is not entitled to any great weight," particularly where "there is an insubstantial factual nexus with the plaintiffs' choice.") (citations omitted).

Plaintiffs imply that the instant case is a matter of national significance, noting in their Complaint that the snail kite "is rapidly heading toward extinction." Complaint at ¶ 1. However, the presence of an endangered bird in South Florida does not constitute a "national" connection that requires this case to be heard in the District of Columbia. To the contrary, the controversy surrounding the Corps' management of Lake Okeechobee has no discernable connection with the District of Columbia, except that one of the Plaintiff environmental organizations and the Federal Defendant has offices within the District of Columbia. The controversy here is very attenuated from the forum that Plaintiffs seek, and Plaintiffs do not allege that government officials in the District of Columbia had any particular involvement in the challenged permitting decision. Thus, the public interest in resolving local controversies at home strongly favors transfer to the United States District Court for the Southern District of Florida, where Lake Okeechobee is located and where other Everglades and snail kite-related cases are pending.

> 2. **The Convenience to the Parties and Witnesses Will Be Served By Transferring This Case.**

Although the burden of showing that transfer is warranted still rests with the Defendants, it is well established that the showing of inconvenience required for transfer under § 1404(a) is less than that required for dismissal of the action under the doctrine of forum *non conveniens*. See Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955); S.E.C. v. Savoy Indus., 587 F.2d 1149, 1154 (D.C. Cir. 1978). Convenience in the context of a motion to transfer is heavily dependent

on the facts of each case, which in this case require transfer to the Southern District of Florida.

    **a.**    **Convenience to the parties**

The convenience to the parties would be better served by the transfer of this action to the Southern District of Florida. The Federal Defendant has offices in the Southern District of Florida. Moreover, each of the Plaintiff organizations has Florida residents as members, and Plaintiff Florida Wildlife Federation is headquartered in Florida. See Complaint at ¶¶ 8 - 9.

    **b.**    **Convenience to potential witnesses**

Another consideration which must be balanced by the Court when determining whether transfer is justified is that of convenience to the witnesses. 28 U.S.C. § 1404(a) (1993). It is possible in this case that witnesses will be utilized, if only for limited purposes, e.g., because Plaintiffs may seek injunctive relief, in which case limited extra-record evidence may be received to ascertain public interest concerns associated with possible injunctive remedies. See Complaint at p. 16 (Plaintiffs request the Court to "enjoin the Corps from managing Lake Okeechobee water in a manner that further destroys or degrades the snail kite's habitat."). Moreover, the documents that will comprise the administrative record were created primarily in Florida, and any relevant witnesses would be located in or near that area.

For these reasons, the interests of both the parties and the potential witnesses favor transfer of this case to the Southern District of Florida.

### IV.  CONCLUSION

All of the factors relevant to consideration of transfer under 28 U.S.C. § 1404(a) argue for transfer of this action to the Southern District of Florida, where venue lies for this case. This action could have been brought in the Southern District of Florida. Further, both the interests of

justice and the interests of the litigants favor transfer. For the foregoing reasons, this case should be transferred to the Southern District of Florida.

Respectfully submitted this 28th day of October, 2005.

                                                KELLY A. JOHNSON
                                                Acting Assistant Attorney General
                                                Environment & Natural Resources Division
                                                JEAN WILLIAMS, Section Chief
                                                SETH M. BARSKY, Assistant Chief

                                                  /s/ Mark A. Brown
                                                MARK A. BROWN
                                                D.C. Bar No. 470050
                                                Senior Trial Attorney
                                                U.S. Department of Justice
                                                Environment and Natural Resources Division
                                                Wildlife and Marine Resources Section
                                                P.O. Box 7369
                                                Washington, D.C. 20044-7369
                                                (202) 305-0204 (telephone)
                                                (202) 305-0275 (fax)
                                                mark.brown@usdoj.gov (e-mail)

                                                Attorneys for Defendant

Of Counsel:

Brooks W. Moore, Esq.
Elizabeth F. Oppenheimer, Esq.
Assistant District Counsel
U.S. Army Corps of Engineers
701 San Marco Boulevard
Jacksonville, Florida 32207
(904) 232-1164 (telephone)
(904) 232-3692 (fax)

Martin Cohen, Esq.
Nicholas J. Landau, Esq.
U.S. Army Corps of Engineers
441 G. St., N.W.
Washington, D.C. 20314-1000

(202)761-0345 (telephone)
(202) 761-1113 (fax)