UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| and | ) ) |
| ATLANTIC SUGAR ASSOCIATION, INC., et al., | ) ) ) |
| Intervenor-Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, et al., | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 99-2464
(RWR)

FILED

DEC 2 8 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

Plaintiffs, a federally-recognized Native American Tribe and two agriculture entities all located in southern Florida, and intervenor-plaintiffs, four business entities located in southern Florida, challenge defendants' development and implementation of proposals contained in the Central and Southern Florida Comprehensive Plan ("the Florida Plan"), which regulates water resources in southern Florida, including parts of the Florida Everglades. Specifically, plaintiffs allege that defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332 (1994), the Water Resources Development Act of 1996 ("WRDA"), Pub. L. No. 104-303, § 528, 110 Stat. 3658 (1996), and

the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq.
(1994), by failing to comply with the NEPA, WRDA and APA
regulatory procedures in developing and implementing the Florida
Plan proposals.  Defendants have moved to transfer this case to
the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).
Because I find that the interest of justice favors transfer,
defendants' motion will be granted, and this case will be
transferred to the United States District Court for the Southern
District of Florida.

<u>BACKGROUND</u>

Pursuant to the WRDA, in July 1999 the Army Corps of
Engineers submitted to Congress a "proposed comprehensive plan
[the Florida Plan] for the purpose of restoring, preserving, and
protecting the South Florida ecosystem."  Pub. L. No. 104-303,
§§ 528(b)(1)(A)(i), (b)(1)(B)(ii), 110 Stat. 3658, 3768.  The
Florida Plan included new proposals that modified certain water
conservation and flood control provisions of the Central and
Southern Florida Project ("C&SF Project").  The C&SF Project,
authorized by Congress in 1948, was established to provide flood
control and water supply for municipal, industrial and
agricultural uses in southern Florida.  (Pls.'s Compl. ¶¶ 28-29.)

Plaintiff Miccosukee Tribe of Indians of Florida, depends on
the Florida Everglades for its subsistence, land, water
resources, natural resources, and its religious, cultural,

-3-

economic and historical identity needs. (Id. ¶¶ 1-7.) Plaintiff
Dade County Farm Bureau, an association of farmers and
agricultural businesses that has operated in southern Dade County
since 1942, depends on southern Florida's water resources to grow
crops. (Id. ¶¶ 10-11.) Plaintiff Brooks Tropicals, Inc., a
Florida corporation that grows tropical fruits in South Dade
County, also depends on southern Florida's water resources to
grow its crops. (Id. ¶¶ 14-15.) Intervenor-plaintiffs, Atlantic
Sugar Association, Inc., Okeelanta Corporation, Osceola Farms
Company and United States Sugar Corporation, are businesses that
depend on southern Florida's water resources for crop irrigation.
(Intervenor-Pls.' Reply Mot. to Int. at 5.) Plaintiffs assert
that the development and implementation of the Florida Plan
proposals failed to follow procedural regulations under the NEPA,
WRDA and APA, and, as a result, have harmed plaintiffs, all of
whom depend on southern Florida's water resources for their
livelihoods. (Pls.' Compl. ¶¶ 7-9, 12-13, 16-17.)

## DISCUSSION

Defendants have moved to transfer this case to the Southern
District of Florida pursuant 28 U.S.C. § 1404(a), which provides
that "[f]or the convenience of parties and witnesses, in the
interest of justice, a district court may transfer any civil
action to any other district or division where it might have been
brought." 28 U.S.C. § 1404(a). When a genuine choice of venue

-4-

exists,[1] the decision to transfer must be made "according to an
'individualized, case-by-case consideration of convenience and
fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29
(1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).
Courts have broad discretion in determining whether transfer is
appropriate pursuant to section 1404(a). See id. In exercising
this discretion, courts must balance a number of case-specific
factors, including the parties' private interests and the public
interests, such as efficiency and fairness. See id. at 29-30.
In summary:

> The private interest considerations include:
> (1) the plaintiff's choice of forum, unless
> the balance of convenience is strongly in
> favor of the defendants; (2) the defendants'
> choice of forum; (3) whether the claim arose
> elsewhere; (4) the convenience of the
> parties; (5) the convenience of the witnesses
> . . . ., but only to the extent that the
> witnesses may actually be unavailable for
> trial in one of the fora; and (6) the ease of
> access to sources of proof.  The public
> interest considerations include:  (1) the
> transferee's familiarity with the governing
> laws; (2) the relative congestion of the
> calendars of the potential transferee and
> transferor courts; and (3) the local interest
> in deciding local controversies at home.

Trout Unlimited v. United States Dep't of Agric., 944 F. Supp.
13, 16 (D.D.C. 1996) (footnotes omitted).

---

[1] It is undisputed that this case could have been brought in
the United States District Court for the Southern District of
Florida, because "a substantial part of property that is the
subject of the action is situated" in southern Florida.
28 U.S.C. § 1391(e)(2).

-5-

A.    **Private Interest Considerations**

   1.    **Choice of Forum**

Plaintiffs chose to file this action in the District of Columbia.  Absent facts that would mitigate against the plaintiffs' choice of forum, plaintiffs' choice is afforded substantial deference.  <u>See</u> <u>Shapiro, Lifschitz & Schram, P.C. v. Hazard</u>, 24 F. Supp.2d 66, 71 (D.D.C. 1998) (citing <u>Int'l Bhd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co.</u>, 621 F. Supp. 906, 907 (D.D.C. 1985); <u>Gross v. Owen</u>, 221 F.2d 94, 95 (D.C. Cir. 1955)); <u>see also</u> <u>Pain v. United Technologies Corp.</u>, 637 F.2d 775, 783 (D.C. Cir. 1980) (holding that a case should not be transferred "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff").

Deference to plaintiffs' forum choice is diminished where, as here, transfer is sought to the plaintiffs' resident forum. <u>See</u> <u>Citizen Advocates for Responsible Expansion, Inc. v. Dole</u>, 561 F. Supp. 1238, 1239 (D.D.C. 1983) (deference to plaintiffs' forum choice is diminished where "transfer is sought to the forum where plaintiffs reside . . . and the connection between plaintiffs, the controversy and the chosen forum is attenuated"); <u>see also</u> <u>Islamic Republic of Iran v. Boeing Co.</u>, 477 F. Supp. 142, 144 (D.D.C. 1979) ("[i]n weighing claims of convenience, the Court recognizes the diminished consideration accorded to a

-6-

plaintiff's choice of forum where . . . that forum has no

meaningful ties to the controversy and no particular interest in

the parties or subject matter"). All parties to this action

reside in southern Florida for purposes of venue. (Defs.' Mot.

to Transfer at 6-7.) Deference to plaintiffs' forum choice is

further diminished when that forum has an insubstantial

connection to the subject matter of the claims at issue. See

Hawksbill Sea Turtle v. FEMA, 939 F. Supp. 1, 3 (D.D.C. 1996)

(holding that plaintiff's choice of forum is entitled to less

deference when there is "an insubstantial factual nexus with the

plaintiff's choice") (internal citations omitted); Trout

Unlimited, 944 F. Supp. at 17; Armco Steel Co. v. CSX Corp., 790

F. Supp. 311, 323 (D.D.C. 1991) ("[D]eference is 'greatly

diminished when the activities have little, if any, connection

with the chosen forum'") (quoting Consolidated Metal Prods.,

Inc. v. American Petroleum Inst., 569 F. Supp. 773, 775 (D.D.C.

1983)). The degree of deference that I must afford to

plaintiffs' choice of forum therefore depends upon the nexus

between plaintiffs' chosen forum and the dispute over the new

proposals in the Florida Plan.

Defendants argue that "this case has a much more attenuated

factual nexus to the District of Columbia that it does to the

Southern District of Florida." (Defs.' Mot. to Transfer at 12.)

Specifically, defendants claim that the Southern District of

Florida is a more appropriate venue for this lawsuit, because the Florida Plan proposals at issue concern water resources only in Florida and are the product of work, environmental studies, and public input conducted in southern Florida.  Defendants also assert that plaintiffs' alleged connection to the District of Columbia -- that the Chief of Engineers and the Secretary of Army submitted a report on the Florida Plan proposals to Congress -- is sufficiently attenuated such that transfer is appropriate. (Id.)  Defendants argue that the "delivery of the proposed [Florida Plan] to Congress is a ministerial act linked to this district only by the fact that the seat of federal government is located here."  (Defs.' Reply at 4.)  The more meaningful connection, defendants contend, is in the Southern District of Florida, where defendants undertook a six year effort to study and receive public input about water resource needs, natural resource requirements and conservation interests, and to develop the Florida Plan proposals at issue.  (Id. at 5.)

Plaintiffs argue that the District of Columbia is the appropriate forum, because the Florida Plan report "was communicated to Congress by Army personnel, in Washington, D.C." (Pls.' Response in Opp'n to Defs.' Mot. to Transfer ("Pls.' Response") at 6-7.)  As defendants pointed out, this is merely a procedural act that does not provide meaningful support for plaintiffs' choice of forum.  (See Defs.' Reply at 4.)

-8-

Plaintiffs further argue, but have not substantiated, that the proposals at issue resulted from decisions made in the District of Columbia.  (See Pls.' Response at 6 ("The litigation is the result of decisions made by federal government officials which appear to have been made in the District of Columbia.") (emphasis added); Pls.' Notice of Filing Supp. Materials, Attach. at 1 (stating that a decision was made "at the Washington level" to expand the report by including information from the C&SF Project's Restudy).)  Plaintiffs do not establish their case's connection to the District of Columbia with one editing decision made "at the Washington level."  To embrace this broad interpretation of venue requirements would ignore the cautions articulated by this Circuit.  See Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993) (holding that courts in the District of Columbia Circuit must "examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia"); see also Stafford v. Briggs, 444 U.S. 527, 543-44 (1980) (finding that Congress, in enacting 28 U.S.C. § 1391(e), intended to allow plaintiffs to bring actions against government officers for injunctions in districts other than the District of Columbia).

       In sum, plaintiffs have failed to demonstrate that they have any significant connection to the District of Columbia.  As in

-9-

<u>Trout Unlimited</u> and <u>Hawksbill</u>, none of the plaintiffs reside in the District of Columbia.  Plaintiffs also have not shown that defendants made any significant decisions or took any meaningful actions concerning the Florida Plan proposals within the District of Columbia.  Considering all the circumstances in this case, as between the parties' different forum preferences, I find that defendants' forum choice is entitled to deference.

     2.   <u>Where the Claims Arose</u>

The Army Corps of Engineers conducted research in southern Florida and developed the Florida Plan proposals through a six year process involving southern Florida personnel and agencies. (Defs.' Mot. to Transfer at 7-8.)  Moreover, the public comment process involved Florida residents, and plaintiffs have not argued that the comment and rulemaking procedures used in implementing the Plan's proposals involved nationwide participation.  Even if the Florida Plan proposals were submitted to officials in the District of Columbia for use in drafting a report, they were developed, reviewed publicly and finalized in southern Florida.  On balance, therefore, I find that the substantive claims alleged in plaintiffs' complaint arose in southern Florida.

-10-

### 3. Convenience to the Parties, Witnesses and Access to Sources of Proof

A forum's convenience for parties and potential witnesses and its access to administrative records are factors weighed in determining whether to transfer a case pursuant to 28 U.S.C. § 1404(a). Here, as is mentioned above, all plaintiffs and defendants reside in southern Florida. While litigating in the District of Columbia may not be a hardship to any party, no party claims that the Southern District of Florida is inconvenient to any party. Accordingly, this factor weighs in favor of transfer.

In addition, this dispute involves an administrative record review and likely will be resolved without the need for witnesses. Accordingly, arguments as to each forum's convenience for witnesses carry little import in this analysis. See Vencor Nursing Ctrs. v. Shalala, 63 F. Supp.2d 1, 7 (D.D.C. 1999) (holding that convenience of witnesses was of little relevance because no evidentiary hearing or trial was foreseeable).

### B. Public Interest Considerations

In determining whether the interest of justice favors transfer, courts also must focus on several public interest considerations, including: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. See Trout Unlimited, 944 F. Supp. at 16.

1. <u>Transferee Court's Familiarity With Governing Law</u>

A court's knowledge and familiarity with the issues presented can weigh for or against transfer in the interest of justice. Both the United States District Court for the Southern District of Florida and the United States District Court for the District of Columbia have adjudicated many cases that involved NEPA and APA claims. This case, however, also presents a challenge under the WRDA, which was enacted "for the purpose of restoring, preserving, and protecting the South Florida ecosystem." Pub. L. No. 104-303, § 528(b)(1)(A)(i). Defendants have pointed out that Florida federal courts commonly preside over environmental and administrative-based claims involving local Florida water and natural resources, including the Everglades. (<u>See</u> Defs.' Mot. to Transfer at 15-16 (citing <u>United States v. South Florida Water Management Dist.</u>, 28 F.3d 1563 (11th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1107 (1995); <u>Miccosukee Tribe of Indians of Florida v. United States</u>, 6 F. Supp.2d 1346 (S.D. Fla. 1998); <u>Miccosukee Tribe of Indians of Florida v. United States</u>, 980 F. Supp. 448 (S.D. Fla. 1997), <u>aff'd</u>, 163 F.3d 1359 (11th Cir. 1998), <u>cert. denied</u>, 120 S. Ct. 41 (1999); <u>South Dade Land Corp. v. Sullivan</u>, 853 F. Supp. 404 (S.D. Fla. 1993)).) Federal courts in the Southern District of Florida are likely to be more familiar with the WRDA, a statute of central importance in this case, although all federal courts are equally capable of

applying the federal laws at issue.[2]  Accordingly, this factor
may not tip the scales in either direction.  If it does, though,
it weighs slightly in favor of transfer.

>        2.    Relative Congestion of the Courts

Neither party argues that congestion in either court will
cause undue delay.  Because the parties presented no evidence
that plaintiffs will receive a speedier resolution of their claim
in either court, this factor is neutral.

>        3.    Local Interest in Deciding Local Controversies

The Supreme Court has held that "[t]here is a local interest
in having localized controversies decided at home."  Gulf Oil
Corp. v. Gilbert, 330 U.S. 501, 509 (1947).  Parties disagree as
to whether the Florida Plan proposals at issue constitute a local
controversy.  Defendants argue that this dispute is a localized
controversy because the Florida Plan proposals were developed
through "extensive and intensive involvement with persons and
agencies principally located in the Southern District of
Florida," "scores of public meetings and outreach sessions" held
in southern Florida, and written comments from southern Florida
residents and organizations.  (Defs.' Mot. to Transfer at 7-8.)
Importantly, defendants assert that the "people and resources

---

[2]Plaintiffs assert that the United States District Court for
the District of Columbia "is thoroughly expert in the application
of federal law to government."  (Pls.' Response at 9.)  If
plaintiffs are implying that this Court has more expertise in
applying federal laws, I decline to accept that argument.

-13-

that will be affected most are those located in South Florida,"
and, therefore, South Florida residents should have the
opportunity to attend any court hearings or other proceedings.
(Id. at 8-11; Defs.' Reply at 5-6.)

Plaintiffs contend that this case "is a matter of National,
not just local, concern," (Pls.' Response at 9), involving
property that affects national interests. However, they offer no
support for this conclusory allegation. While there may be some
national interests involved, plaintiffs have not shown that any
individuals or organizations outside of Florida have participated
in the public comment and input. Plaintiffs also have not shown
that a national interest in the Florida Everglades supersedes the
many local interests at stake as well as the public's ability to
participate in future court proceedings.[3]

_____

[3]Plaintiffs and intervenor-plaintiffs rely on Concerned
Rosebud Area Citizens v. Babbitt, 34 F. Supp.2d 775 (D.D.C.
1999), in arguing that the existence of a localized controversy
regarding southern Florida's water resources does not support
defendants' motion to transfer. (See Pls.' Response at 10-11;
Intervenor-Pls.' Opp'n to Defs.' Mot. to Transfer at 1-4, 9, 12.)
The court's decision in Concerned Rosebud Area Citizens, however,
focused on convenience to potential witnesses and does not aid
plaintiffs' or intervenor-plaintiffs' arguments. In Concerned
Rosebud Area Citizens, plaintiffs challenged the government's
decision to approve a lease between a Native American Tribe and a
Nebraska general partnership to construct a pork production
facility on the Tribe's property in South Dakota. 34 F. Supp.2d
at 775-76. The court denied the government's motion to transfer
to the District of South Dakota, stating that the "[g]overnment's
entire argument in favor of transfer is contingent upon a
decision [to have witnesses testify at a preliminary injunction
hearing] that has not been made." Id. at 776. In addition,
Concerned Rosebud Area Citizens did not involve a challenge to a

-14-

This case presents a controversy over proposals that will
have a direct and substantial impact on the water resources,
property and residents of southern Florida.  In addition, this
case concerns proposals issued pursuant to the WRDA, a statute
specifically regulating the southern Florida ecosystem.  The
Florida Plan proposals and the court's application of the WRDA
will have the greatest impact, if not sole impact, on southern
Florida residents.  See Trout Unlimited, 944 F. Supp. at 19-20
(holding that "matters that are of great importance in [the
transferee state] should be resolved in the forum where the
people 'whose rights and interests are in fact most vitally
affected by the suit'" (citations omitted)).  Those residents
deserve, it would seem, the most reasonable opportunity to have
access to any future court proceedings in this case.  See
Seariver Maritime Fin. Holdings, Inc. v. Pena, 952 F. Supp. 9, 11
(D.D.C. 1997) (holding that transfer to Alaska was appropriate to
allow "the citizens of Alaska to participate in the proceedings
arising out of this case").  As the Court in Seariver held,
"[w]hile the interpretation of a federal statute can have broad
implications, it is clear in this case that the people of
[southern Florida] have an interest in the dispute that far

---

statute that specifically regulated the South Dakota property at
issue.  Here, by contrast, plaintiffs brought a challenge under
the WRDA, which specifically regulates the southern Florida
property and resources at issue.

-15-

outweighs the interests of the citizens of this District." <u>Id.</u>
This factor weighs heavily in favor of transfer.

CONCLUSION

Defendants' request to transfer plaintiffs' cause of action
is "in the interest of justice" under 28 U.S.C. § 1404(a).
Parties are all residents of southern Florida where the
substantive claims arose. Plaintiffs have challenged the Florida
Plan proposals under the WRDA, which specifically regulates
southern Florida's ecosystem. The outcome will most directly
affect south Florida residents. Accordingly, the balance of
factors I have considered weighs in favor of transferring this
case to the Southern District of Florida.

For these reasons, defendant's motion to transfer to the
United States District Court for the Southern District of Florida
pursuant to 28 U.S.C. § 1404(a) will be granted. An appropriate
order accompanies this memorandum opinion.

SIGNED this 28th day of December, 2000.

RICHARD W. ROBERTS
United States District Judge