UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WILDLIFE FEDERATION, *et al.* )<br> )<br>    Plaintiffs,                      )<br> )<br>v.                                     )<br> )<br>FRANCIS J. HARVEY, in his official capacity )<br>Acting Secretary of the U.S. Department )<br>of the Army                            )<br> )<br>    Defendant.                         ) | CASE NO. 1:05cv01671 (CKK) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER VENUE**

**INTRODUCTION**

The endangered Everglade snail kite is a medium-sized hawk found primarily in tropical and subtropical lowland freshwater marshes, from Florida, Cuba, and Mexico to Argentina and Peru. Multi-Species Recovery Plan for South Florida ("MSRP") at 4-291. As reflected by its listing under the Endangered Species Act, the management of this endangered species is of national significance. This case, which addresses mismanagement of a substantial portion of the kite's range, may play an important role in deciding the fate of this species.

In their Complaint Plaintiffs National Wildlife Federation and Florida Wildlife Federation allege that, in violation of the Endangered Species Act ("ESA"), the U.S. Army Corps of Engineers ("Corps" or "Defendant") has mismanaged Lake Okeechobee's water regulation schedules and failed to consult with the U.S. Fish and Wildlife Service ("FWS") over impacts to this endangered bird. A major element of Plaintiffs' claims is that the Corps has allowed the national interest in species preservation, as expressed in the ESA, to be overridden by powerful local interests in Florida favoring higher water levels in the Lake. Seeking to promote this deference to local interests, Defendant now moves for a change in venue to the Southern District of Florida. This Court has repeatedly rejected similar motions in environmental cases. Plaintiffs oppose this motion.

## ARGUMENT

Defendant's motion is based on 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." This Court has discretion to transfer an action based on its "individualized, case-by-case consideration of convenience and fairness." *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1987).

When determining whether to transfer a case, courts consider both the private interests of the parties and the public interests of the courts. Factors considered include

deference to the plaintiffs' traditional privilege of choosing the forum, the convenience of the parties, the convenience of the witnesses, the location of counsel, the location of records, the relative congestion of the courts, the courts' familiarity with the governing law, and other practical considerations of conducting a trial. *Nichols v. United States Bureau of Prisons*, 895 F. Supp. 6, 8 (D.D.C. 1995). The weight of these factors indicates that this case should not be transferred.

A decision to transfer under § 1404(a) "must be based on the particular facts and circumstances of a case, and a defendant wishing to upset plaintiff's choice of forum must demonstrate a need for transfer with particularity." *Ross v. United States*, 641 F. Supp. 368, 377 (D.D.C. 1986). The burden is on the party moving to transfer to show that "the balance of convenience of the parties and witnesses and the interest of justice are in its favor." *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995).

As demonstrated below, Defendant cannot meet its burden of showing that this case should be transferred to the Southern District of Florida.

## I.  Venue Is Proper in this Court and Plaintiffs' Choice of Forum Should Be Respected

Venue is appropriate where either (1) any defendant resides, (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or (3) any plaintiff resides. 28 U.S.C. § 1391(e). As even Defendant concedes, the District of Columbia is a proper venue for this litigation.

When considering whether to transfer a case, a court must weigh the factors set forth in § 1404(a) against "the longstanding principle that the plaintiff's choice of forum *rarely* should be disturbed." *Dooley v. United Tech. Corp.*, 786 F. Supp. 65, 82 (D.D.C. 1992) (emphasis added). In other words, for Defendant to succeed, it must meet "the *heavy burden* of establishing that Plaintiff[s'] choice of forum is inappropriate." *Shapiro, Lifschitz & Schram. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998) (emphasis added).

"Although the Court has broad discretion to adjudicate motions to transfer under § 1404(a), the Court may not transfer a case from plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by plaintiffs." *Id.* (citing *Pain v. United Techs. Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980)). "It is almost a truism that a plaintiff's choice of forum will rarely be disturbed and, so far as the private interests of the litigants are concerned, it will not be unless the balance of convenience is strongly in favor of the defendant." *Id.* (quoting *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955)).

Plaintiffs have deliberately chosen this forum as the most convenient. As the Court held in *NAACP v. Levi*, 418 F. Supp. 1109, 1113 (D.D.C. 1976), "[P]laintiffs have made what is presumed to be a considered and deliberate choice of forums. Their choice is entitled to serious consideration and should not be disturbed absent a strong showing that their chosen forum is *completely inappropriate and inconvenient*." (Emphasis

4

added.)  Accordingly, Plaintiffs' decision to file suit in the District of Columbia should be respected.

## II. The Interests of the Parties Favor Retaining the Current Action in Washington, D.C., and the Convenience of the Possible Witnesses Is Irrelevant

When determining whether to transfer a case under § 1404(a), the Court considers the following private factors:

> (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, . . . but only to the extent that witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Shapiro,* 24 F. Supp. 2d at 71 (internal citations omitted).

A review of these factors weighs heavily in favor of Plaintiffs' choice of forum. First and second, as stated above, Plaintiffs' choice of forum (which is due substantial deference) is in Washington, D.C., and Defendant's choice of forum is in the Southern District of Florida.

Third, while the claim here involves an endangered species living in Lake Okeechobee, the challenges involve violations of *federal* laws by the *federal* government – and the officials ultimately responsible for the challenged decisions are located in Washington, D.C.

Fourth, as also noted above, the top leadership (as well as counsel) of Defendant and of Plaintiff NWF are in the Washington, D.C. area.  In other words, this case will be

litigated by parties and lawyers residing hundreds of miles from Florida. Transfer to the Southern District of Florida would increase Plaintiffs' litigation costs significantly by requiring them to obtain local counsel in Florida and to travel regularly to Florida for court appearances.

Plaintiffs' legal team is formed of public interest attorneys based in the District of Columbia. There is a dearth of public interest attorneys in Florida, and if *pro bono* local counsel could not be secured in Florida, then Plaintiffs would have to pay an attorney to represent them there. Given that Plaintiffs are non-profit organizations with limited resources, the added financial burdens from a transfer to Florida militate against such transfer. *See Gemological Inst. of Am. v. Thai Dai Phan,* 145 F. Supp. 2d 68, 74 (D.D.C. 2001) ("A court may properly consider in assessing the interest of justice the relative ability of the parties to bear the expenses of litigating in a distant forum.") (internal citations omitted).

Fifth, this case does not raise any serious issues relating to the convenience of witnesses. In this case, Plaintiffs do not intend to take any discovery on their claims, but rather will rely on the record prepared by Defendant.[1] Thus, the parties will file for summary judgment based on documentary evidence only. Supplementation of the

---

[1] Plaintiffs reserve the right to move to supplement the record in the event that the record submitted by Defendant is inadequate.

record, if any, will likely require nothing more than the mailing of additional documents to Washington, D.C.[2]

Defendant argues that live testimony will be necessary to resolve Plaintiffs' request for an injunction. This is unlikely. As Local Rule 65.1(d) states, "[t]he practice in this jurisdiction is to decide preliminary injunction motions *without live testimony where possible.*" (Emphasis added). As this rule suggests, witness affidavits are a perfectly feasible method to convey facts necessary to resolve a request for injunctive relief. *See The Wilderness Soc'y v. Babbitt,* 104 F. Supp. 2d 10, 15 (D.D.C. 2000) ("While it is possible that upon a motion for a preliminary injunction . . . this Court may allow witnesses to testify, it is more likely that there will be no witnesses at all in this matter. Accordingly, this factor does not favor transfer."); *Vencor Nursing Ctrs. v. Shalala,* 63 F. Supp. 2d 1, 7 (D.D.C. 1999) (noting that convenience of witnesses was of little relevance because no evidentiary hearing or trial was foreseeable); *see also Florida Key Deer v. Brown,* 386 F. Supp. 2d 1281 (S.D. Fl. 2005) (enjoining FEMA from issuing flood

---

[2] The fact that a substantial portion of the record may be located in Florida is of little consequence in deciding this transfer motion. As explained in a case involving a massive record:
> No matter where the litigation proceeds, these materials will have to be photocopied and shipped to [plaintiffs'] lawyers who live and work in the District area . . . . Once the material is photocopied, boxed, and sent to the District, *it would not be a substantially greater hardship to send an additional copy of these documents to the courthouse.*

*Air Lines Pilot Ass'n v. E. Air Lines,* 672 F. Supp. 525, 527 (D.D.C. 1987) (emphasis added). Thus, no matter where the administrative record is located, Defendant could easily make a copy for the Court here.

insurance in endangered species' habitat based only on evidence within the administrative record).

Moreover, this Court has held that convenience of the witnesses should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *The Wilderness Soc'y*, 104 F. Supp. 2d at 15; *Trout Unlimited*, 944 F. Supp. at 16 (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851 (2d ed. 1986)). As **Defendant itself admitted** in another ESA case against both Plaintiffs before this Court:

> Although it is true that agency decision makers from the Army Corps of Engineers reside in Florida, in the unlikely event that their testimony will be necessary, *they are more than willing to testify in Washington.*

United States' Response to Motion to Transfer at 1-2, *Nat'l Wildlife Fed'n v. Caldera*, No. CIV.A. 00-1031 2002 WL 628649 (D.D.C. Sept. 11, 2000) (emphasis added).[3]

---

[3] Ironically, Defendant opposed the transfer in *Caldera*, explaining (i) "[a] change in venue should not be freely granted," (ii) "plaintiffs choice of forum should rarely be disturbed," (iii) transfer is inappropriate solely to serve the movants' "preference to bring this record review case in Florida," and (iv) transfer from D.C. to Florida would "[m]erely shift[] the inconvenience from the defendant to the plaintiff." *See* United States' Response to Motion to Transfer at 1-2, *Nat'l Wildlife Fed'n v. Caldera*, No. CIV.A. 00-1031 (D.D.C. Sept. 11, 2000). Defendant further explained that "[w]hile this case does present issues which relate to Replacement Permits for projects located in Florida, *plaintiffs choice to challenge these permits in this Court should not be disturbed*." *Id.*, at 2 (emphasis added). The rationale asserted by Defendant in the *Caldera* case applies with equal force here and should lead to denial of Defendant's motion.

In summary, the convenience-of-witnesses factor should carry no weight because no live witnesses will likely be necessary in this administrative record review case, and in the event that live testimony is necessary, any witnesses could testify here.

### III.    There Are No Interests of Justice that Strongly Favor Transferring Venue

The interest-of-justice factor relates to the "efficient functioning of the courts" and contemplates matters such as (1) the familiarity of the court with the applicable law, (2) relative congestion of the courts' calendars, and (3) the local interest in deciding local controversies at home.  *Shapiro*, 24 F. Supp. 2d at 71.  The "interest of justice" is a separate component of a § 1404(a) transfer analysis and may be determinative even if the convenience of the parties and witnesses might call for a different result.  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986); 15 Wright & Miller, *Federal Practice and Procedure*, § 3854, at 439-40 (2d ed. 1986).  Here, the interest of justice supports the retention of this case.

#### A.    This Court is just as familiar with the specific factual issues

Defendant argues that this case should be transferred to the Southern District of Florida because there are three cases pending there involving the 1948 Central and Southern Florida Project for Flood Control and Other Purposes ("C&SF Project"), which is a massive system of levees, canals, and pump stations.  All three cases, however, are

very different than the one hand and would offer virtually no aid to the judges of the Southern District of Florida if one of them were asked to decide this case.[4]

In the first case, *Friends of the Everglades v. South Florida Water Management District* (S.D. Fla., No. 02-cv-800309)(CMA), the plaintiffs sued the South Florida Water Management District for failing to obtain a Clean Water Act permit to pump polluted water into Lake Okeechobee at two specific pumping stations. This case has no endangered species issues and relies on very different facts. Whether or not the state agency must obtain a Clean Water Act permit has nothing to do with the questions surrounding the Corps' current regulation schedule and its effects on the endangered snail kite.

In the second case, *Miccosukee Tribe of Indians v. U.S. Corps of Engineers* (S.D. Fla. No. 02-cv-22778(KMM)), the plaintiff is seeking relief arising from certain actions by the Corps in adopting and implementing an Interim Operational Plan for Protection of the Cape Sable Seaside Sparrow ("IOP"). Specifically, this case focuses on degradation of land in Water Conservation Area 3A, well south of Lake Okeechobee.

Finally, in the third case, *Sierra Club v. Flowers* (S.D. Fla. No. 03-cv-23427) (WMH), the plaintiffs sued the Corps and FWS for allegedly violating a host of environmental laws (including the ESA) by issuing mining permits for certain

---

[4] Each of the three cases has a different judge. Thus, experience from at least two of these cases (and perhaps all three) will provide no benefit to a judge of the Southern District of Florida if this case were to be transferred there.

10

Everglades wetlands in southern Florida.  This case, which deals with facts and legal issues that are completely disconnected from those concerning the Corps' water regulation schedule and the Everglades snail kite, offers virtually nothing instructive for a judge considering the present case.

In summary, the Southern District of Florida is not any better suited to hear this case than the District of Columbia.

**B.    This Court is more familiar with the relevant legal issues**

Unlike in the Southern District of Florida, the courts of this District and Circuit have great familiarity with the applicable law in this case.  *See Concerned Rosebud Area Citizens v. Babbitt*, 34 F. Supp. 2d 775, 776 (D.D.C. 1999) ("[T]he issue . . . is solely whether the federal government complied with federal law, and that is the kind of question that is routinely and properly answered in this District and Circuit.").  In the last three years alone, the courts of this District have issued about 32 opinions (published on Westlaw) for cases involving Endangered Species Act claims, whereas the Southern District of Florida issued only four.

**C.    While both Districts are busy, the Southern District of Florida is more congested than the District Court of D.C.**

While both districts are busy, the caseload congestion is greater in the Southern District of Florida.  *See* U.S. District Court Judicial Caseload Profile Report, available at http://www.uscourts.gov/cgi-bin/cmsd2004.pl  (viewed on November 13, 2005).  In fact, from October 1, 2003 through September 30, 2004 (the most recent statistics available),

11

the District of Columbia had 3,121 total cases filed, while the Southern District of Florida had well over twice as many (8,479). During this time period, each judge within the D.C. Circuit had an average of 208 filings and 295 pending cases, while each judge in the Southern District of Florida had an average of 470 filings and 406 pending cases. *Id.* Similarly, in D.C. each judge had an average weighted filing[5] score of 261, whereas the average judge in the Southern District of Florida had a score of 513. *Id.* To make matters worse, the Southern District of Florida Courthouse has closed or operated under a reduced schedule on numerous occasions and for extended periods in the last few months as a result of multiple hurricanes. *See* S.D. FL webpage at http://www.flsd.uscourts.gov/default.asp?file=press.asp (last viewed on November 13, 2005).

The Southern District of Florida's heavy caseload has long been recognized "as one of the busiest district courts in the Nation." In 1990, Senator Mack noted: "The southern district of Florida is one of the busiest district courts in the Nation. Not only does the southern district court have complex drug cases, but also a growing civil case docket as well." Congressional Record S9727 (July 13, 1990); *see also* Judge Donald Graham Memo, U.S. District Court for the Southern District of Florida ("Southern District of Florida is one of the busiest trial courts in the Country.") at

---

[5] According to the U.S. Courts web page, the federal judiciary applies weights to filings in the U.S. district courts to account for the different amounts of time judges require to

http://www.floridabar.org/DIVPGM/PU/FCPCSurvey.nsf/0/1c2cb7c212279876852569890073806f/$FILE/Attachment%202.pdf.  As such, this public interest factor also favors denial of Defendant's motion to transfer.

> **D.     Because this action involves an issue of national significance, it should be decided in the District Court of D.C.**

Defendant incorrectly characterizes this dispute as localized and suggests that the only people affected by its outcome are the residents of Florida.  Def. Mem. at 10.  Defendant could not be more wrong on this point.  Given the dire warnings being sounded by the scientific community concerning recent losses of the snail kite's habitat, and the thousands of acres of habitat at stake here, this case could play a large role in deciding the fate of this species.  Since the date of the ESA's original enactment in 1973 (a time when the snail kite was already listed as endangered under a predecessor statute), Congress has made clear that the fate of imperiled species was a matter of national concern.  It declared that "these species of fish, wildlife and plants are of esthetic, ecological, educational, historic, recreational and scientific value *to the Nation and its people*."  16 U.S.C. § 1531(a) (emphasis added).

As the Supreme Court has recognized, the overall structure of the ESA "reveals an explicit congressional decision to require agencies to afford first priority to the *declared national policy of saving endangered species*."  *TVA v. Hill*, 437 U.S. 153, 185

---

resolve various types of action.  The total "weighted filings" is the sum of all weights assigned to civil cases and to felony defendants.

(emphasis added). *See also* H.R. Rep. No. 930142, at 4-5 (1973) ("From the most narrow possible point of view, it is in the best interests of mankind to minimize the losses of genetic variations. The reason is simple: they are potential resources. They are keys to puzzles which we cannot solve, and may provide answers to questions which we have not yet learned to ask."), *quoted in Nat'l Ass'n of Home Builders v. Babbitt*, 130 F.3d 1041, 1051 (D.C. Cir. 1997).[6]

This case also calls upon the court to interpret federal statutes, which were designed to establish national standards for endangered species and wetlands conservation. This Court is uniquely qualified, due to its location and experience, to resolve these issues of national concern.

### E. The Courts of this District have repeatedly rejected motions under similar circumstances

This Court has flatly rejected similar motions to transfer environmental matters on numerous occasions. For example, this Court recently rejected an attempt by the Corps and FWS to transfer to the Middle District of Florida an ESA case challenging a

---

[6] The national significance is also evidenced by the national attention surrounding the snail kite. For example, the snail kite's plight has been highlighted in the New York Times, Boston Herald, and other such sources. *See, e.g.*, Karen Dillon, *Work Done in KC Aids Everglades*, The Kansas City Star (Apr. 12, 2005); Coralie Carlson, *Hurricanes Flood Florida's Lake Okeechobee*, The Cincinnati-Kentucky Post (Oct. 29, 2004); *The Right Balance*, Kids Discovery, 2004 WLNR 5942659 (Aug. 1, 2004); David Jones, *Florida Bird Sanctuary Offers Glimpses of Rare Treasures*, Boston Herald (Feb. 27, 2003); Syd Kearney, *Destination: Florida Everglades, A Fragile Ecosystem Restoration Effort is Underway*, Star Tribune, Newspaper of the Twin Cities (Minneapolis, MN) (June 2, 2002); William K. Stevens, *Lessons of Kites and Snails*, The New York Times (Mar. 22, 1994).

mining permit in Florida panther habitat. *NWF v. Norton*, No. 03cv01393 (D.D.C. Sept. 17, 2003) (J. Robertson) (denying motion to transfer without opinion).

This Court also rejected an attempt by the Department of Agriculture to have a case transferred to Montana simply because the animals at issue, some of the plaintiffs, and some of the agency actors were all located in Montana. *See Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124 (D.D.C. 2001). This Court explained that, because "two of the five plaintiffs . . . have offices in the District of Columbia," because "both of the plaintiffs' counts focus on interpretation of federal statutes," and because "this case has some national significance," transfer was inappropriate. *Greater Yellowstone Coalition*, 180 F. Supp. 2d at 128-29.

Similarly, in *The Wilderness Society v. Babbitt*, this Court rejected an attempt by the Department of the Interior to transfer an environmental action to Alaska simply because the federal lands at issue, some of the agency officials, and some of the environmental plaintiffs were located in Alaska. 104 F. Supp. 2d at 13. In *Concerned Rosebud Area Citizens v. Babbitt*, this Court rejected the Department of Interior's motion to transfer a NEPA action to South Dakota because "the issue in this case is solely whether the federal government complied with federal law, and that is the kind of question that is routinely and properly answered in this District and Circuit." 34 F. Supp. 2d 775, 776 (D.D.C. 1999). Likewise, in *National Wildlife Federation v. Westphal*, this Court rejected the Corps' motion to transfer a CWA permit challenge to Mississippi because "the

15

Corps' statutory headquarters are located in the District," and because "this court routinely reviews agency decisions sought under the APA." No. CIV.A. 98-2700, 1999 WL 1567731, at *1 (D.D.C., Mar. 3, 1999). *See also Nat'l Wildlife Fed'n v. Caldera*, Case No. 1:00-cv-01031 (D.D.C. Sept. 15, 2000) (J. Robertson) (denying motion to transfer case involving the endangered Florida panther to the Middle District of Florida without opinion).

In short, as the abundance of case law in this Circuit confirms, it is entirely appropriate that litigation concerning federally protected species occur here, where the agency officials with ultimate responsibility for decisions related to these species reside.

### F. All cases cited by Defendant are distinguishable

Defendant attempts to argue that any case involving property and agency officials outside D.C. should be transferred to the district where the property and the officials are located. Def. Mem. at 6-12. Each case cited by Defendant, however, is easily distinguishable.

First, Defendant cites *Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1 (D.D.C. 1996). In that case, however, a prior action had been filed in the Virgin Islands, in which the Virgin Island district court heard three days of evidentiary testimony and oral argument and had extensive evidentiary hearings. Moreover, all plaintiffs and plaintiffs' lead counsel were located in the Virgin Islands. *Id.* at 3. Finally, *Hawksbill* did not involve claims that could be resolved primarily or solely on the administrative

16

record, and thus convenience of witnesses was a factor. *Id.* at 6. None of these factors are present in this case.

Second, Defendant cites *Northwest Forest Resource Council v. Babbitt*, No. Civ.A. 93-1579, 1994 WL 908586 (D.D.C. Apr. 13, 1994), noting that the marbled murrelets do not live in Washington, D.C. However, in *Northwest Forest*, this Court relied in large part on the fact that, at that time, there was "ongoing litigation pending in the Western District of Washington that involve[d] substantially similar issues." *Id.* at *1. This Court noted that the "factual background and legal issues that the two cases present[ed were] similar and largely intertwined." *Id.* at *3 (citations omitted). Moreover, the rulemaking at issue had been "before the Western District of Washington for three years, and thus "[t]hat court [was] extremely knowledgeable about the facts of this case and the administrative record." *Id.* at *4. Although Defendant cites three cases pending in the Southern District of Florida, as explained above in III.A., these cases are based on very different facts as presented here.

Next, Defendant cites *Trout Unlimited v. U.S. Department of Agriculture*, 944 F. Supp. 13 (D.D.C. 1996), noting that the Court deferred "to the more compelling interest of the State of Colorado" in having the case decided locally. That case, too, is distinguishable on multiple grounds. First and foremost, this Court transferred that case largely because it involved the "interpretation of [Colorado] state law." *Id.* at 19. Furthermore, in *Trout Unlimited* plaintiffs had counsel in Colorado and offered no facts

17

suggesting that they would be inconvenienced by a transfer there. *Id.* at 18. In this case, neither of these considerations is true.

Next, Defendant cites *Miccosukee Tribe of Indians v. United States*, Civ A. No. 99-2464 (Dec. 28, 2000) (RWR), arguing that the plaintiffs in that case failed to demonstrate any significant connection to the District of Columbia and that the local people have an interest in the dispute. Unlike the current action, however, the plaintiffs in *Miccosukee* are *all* located in Florida – a factor found significant to this Court. Similarly, in that case, the Court noted that no individual or organization outside of Florida participated in the comment period. In contrast, here, Plaintiff NWF is a national organization incorporated and located in DC and with no offices in Florida. Although the issue of reinitiation has not had a comment period, report studies on Lake Okeechobee's water regulation schedule are specifically sent to numerous parties outside of Florida. For example, a quick review of the designated recipients of the Corps of Engineers' Draft Integrated Feasibility Report and Environmental Impact Statement for the Lake Okeechobee Regulation Study ("Draft EIS") included countless Washington, D.C. addresses, such as the Environmental Protection Agency, the Department of Interior, the Corps of Engineers' headquarters, the U.S. Department of Commerce, National Oceanic and Atmospheric Administration, Defenders of Wildlife, and Environmental Defense Fund. There are also countless recipients (including NWF's Georgia office) in other places around the county. *See* Draft EIS at § 11.

Finally, Defendant cites *Sierra Club v. Flowers*, 276 F. Supp. 2d 62 (D.D.C. 2003). While we believe that case was wrongly decided in light of the majority of cases within this District, we note that it too is distinguishable. In that case, the Court was persuaded in large part by the fact that the Corps issued the permits to meet the objectives of the Lake Belt Plan, *drafted by a state committee and adopted by the Florida legislature*." *Id.* at 71 (emphasis added). As such, the Court found that the residents of Florida have a specific interest. Conversely, this case does not involve implementation of a state plan. Rather, it involves federal actions taken in contravention of federal laws and involves the existence of a nationally significant and federally endangered species.

## CONCLUSION

For the foregoing reasons, Defendant's motion to transfer venue to the Southern District of Florida should be denied.

Dated: November 15, 2005                                Respectfully submitted,

/s/John Kostyack_____
John Kostyack, Esq.
D.C. Bar No. 415484
Tel: (202) 797-6879

M. Randolph Sargent, Esq.
D.C. Bar No. 471907
Tel: (202) 797-6865
National Wildlife Federation
1400 16th Street, N.W., Suite 501
Washington, D.C. 20036-2266
Fax: (202) 797-6646
Attorneys for Plaintiffs