UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| NATIONAL WILDLIFE FEDERATION, *et al.*, |
| Plaintiffs, |
| v. |
| FRANCIS J. HARVEY, in his official capacity as Acting Secretary of the U.S. Department of the Army, |
| Defendant. |

Civil Action No. 05–1671 (CKK)

**MEMORANDUM OPINION**
(June 15, 2006)

Presently before this Court is [4] Federal Defendant's Motion to Transfer Venue to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Plaintiffs, the National Wildlife Federation ("NWF") and the Florida Wildlife Federation ("FWF"), bring suit against Francis J. Harvey in his official capacity as Acting Secretary of the United States Department of the Army ("DOA"), alleging that the United States Corps of Engineers ("Corps"), through its water management schedule for Lake Okeechobee, violates the Endangered Species Act ("ESA"). Defendant argues that this action is more appropriately brought in the Southern District of Florida and requests that the case be transferred pursuant to Section 1404(a). After considering Defendant's Motion, Plaintiffs' Opposition, Defendant's Reply, and the relevant statutes and case law, the Court shall GRANT [4] Defendant's Motion to Transfer Venue.

# I. BACKGROUND

The snail kite is a bird of prey that lives in Southern Florida's Everglades Ecosystem and is listed as endangered pursuant to the Endangered Species Act of 1973. Compl. ¶ 14. Part of the snail kite population inhabits the marshes of Lake Okeechobee, which is the principal natural reservoir in Southern Florida. Def.'s Mem. at 2.[1] Recently, the snail kite population has declined. Compl. ¶ 1; Answer ¶ 1.

In Plaintiffs' Complaint, Plaintiffs allege that "[m]uch of this decline is due to the Corps' mismanagement of Lake Okeechobee and failure to consult with wildlife experts at the U.S. Fish and Wildlife Service ("FWS")." Compl. ¶ 1. In particular, Plaintiffs argue that the Corps failed to reinitiate an ESA consultation with the FWS regarding its modifications to the original 1978 schedule for Lake Okeechobee's water levels, and as a result, the Corps has jeopardized the snail kite population and violated ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2), and 50 C.F.R. § 402.16(b). Compl. ¶ 37. Plaintiffs also allege that the Corps' water management actions have harmed the snail kite population by impairing their patterns of breeding, feeding and sheltering, in violation of ESA § 9, 16 U.S.C. § 1583(a)(1)(B). Compl. ¶ 40. Finally, Plaintiffs argue that by failing to develop a conservation program for the snail kite, Defendant has violated ESA § 7(a)(1), 16 U.S.C. § 1536(a)(1). Compl. ¶ 42. Plaintiffs seek a remedy of both declaratory and injunctive relief. Compl. at 16. Defendant denies that its management of Lake Okeechobee caused the decline of the snail kite population or harmed the snail kite. Answer ¶ 1.

Defendant's Motion to Transfer asserts that the interests of justice will be promoted by

---

[1]Defendant filed a Motion to Transfer Venue, a Memorandum in Support thereof, and a Reply Memorandum in Support Thereof. The Court shall cite to these documents as "Def.'s Mot.," "Def.'s Mem.," and "Def.'s Reply," respectively.

transferring the case to the Southern District of Florida.  Def.'s Mot. at 1.  In particular, Defendant argues that transfer is appropriate because 1) the alleged harm occurs in Southern Florida; 2) the Corps' management of Lake Okeechobee is of regional rather than national concern, because it significantly impacts the residents and wildlife of South Central Florida and has no impact on the District of Columbia; 3) there are factually similar cases pending in the Southern District of Florida that make that court uniquely competent to resolve the present case; 4) the decision at issue was made outside of the District of Columbia; and 5) Florida is more convenient for the parties and potential witnesses.  Def.'s Mem. at 10–13.

In their Opposition, Plaintiffs argue that the case should not be transferred because 1) the management of the snail kite is an issue of national importance; 2) the officials ultimately responsible for the challenged decisions are located in the District of Columbia; 3) transfer of venue would be costly and inconvenient for the National Wildlife Federation, which is headquartered near the District of Columbia; and 4) the transferor court is less congested than the transferee court and has more experience deciding cases that involve violations of federal laws by the federal government.  Pls.' Opp'n at 5–6, 11–14.

## II. LEGAL FRAMEWORK

Defendant seeks to transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The Court is afforded broad discretion to decide whether transfer from one jurisdiction to another is proper.  *SEC v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

The decision to transfer is made by an "individualized, case-by-case consideration of convenience and fairness . . . ."  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The threshold question under Section 1404(a) is whether the action "might have been brought" in the Southern District of Florida.  *Id.* at 616.  According to 28 U.S.C. § 1391(e)(2), a suit based on a federal question, as is this one, may be brought "in any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated . . . ."  28 U.S.C. § 1391(e)(2).  In the case currently before the Court, venue is proper in the Southern District of Florida because the events giving rise to Plaintiffs' claims–the Corps' management of Lake Okeechobee and its impact on the snail kite population–took place in Southern Florida.  Thus, this action could have been brought in the Southern District of Florida.

Even if venue is proper in the Southern District of Florida, the Court may transfer a case only if the balance of private and public interests weighs in favor of transfer.  *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).  Private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof.  *Id.  See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).  The public interest factors include: (1) the degree to which the courts in both venues are familiar with the governing laws; (2) the relative congestions of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home.  *See Jumara*, 55 F.3d at

879–80; *Trout Unlimited,* 944 F. Supp. at 16.

## III. DISCUSSION

### A.     *Private Interest Factors*

The plaintiff's choice of forum, the first private interest factor, is afforded substantial

deference, and a case should not be transferred "from a plaintiff's chosen forum simply because

another forum, in the court's view, may be superior to that chosen by the plaintiff." *Pain v.*

*United Technologies Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980). However, the deference given

to the plaintiff's choice of forum is diminished where the "forum has no meaningful ties to the

controversy and no particular interest in the parties or subject matter." *Islamic Republic of Iran*

*v. Boeing Co.*, 477 F. Supp. 142, 143–44 (D.D.C. 1979) (citing *Pacific Car & Foundry Co.*

*Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *see also Hawksbill Sea Turtle v. FEMA*, 939 F. Supp.

1, 3 (D.D.C. 1996) (quoting *Comptroller of Currency v. Calhoun Nat'l Bank*, 626 F.Supp. 137,

140 n.9 (D.D.C. 1985)) (noting that a plaintiff's choice of forum is entitled to less deference

where there is "an insubstantial factual nexus with the plaintiff's choice").

In the present action, the nexus between Plaintiffs' choice of forum, the District of

Columbia, and the facts of the controversy, is attenuated compared to the Southern District of

Florida's connection with the case. The disputed actions of the Corps have a direct and

substantial impact on the residents and wildlife of Southern Florida. Lake Okeechobee and the

snail kite population are located in Southern Florida, and "[t]he Lake Okeechobee schedule

affects the St. Lucie and Caloosahatchee River estuaries where the lake discharges to tide to the

East and West, urban drinking water supply, irrigation for agricultural canals, recharge of

wellfields, habitat within and surrounding the lake, sportfishing and commercial fisheries,

tourism, wading bird breeding and foraging, resident and migratory waterfowl, and endangered species as well as water available to the Everglades . . . ." Def.'s Mem. at 10. Plaintiffs, on the other hand, have not provided any evidence that the management of Lake Okeechobee impacts the District of Columbia, other than the District's broad concern for endangered species. Pls.' Opp'n at 13. Considering the impact of the case on Florida's local interests, Florida's connection to the case tips the balance in favor of transfer. *See Trout Unlimited*, 944 F.Supp. at 17 (holding that because the challenged decisions directly impacted the lands, waters, wildlife, and people of Colorado, Colorado had more of a connection than the District of Columbia to the case).

Plaintiffs have characterized Defendant's management of Lake Okeechobee as having national significance because this case could play a large role in deciding the fate of the snail kite species, and because Congress has declared the fate of imperiled species a matter of national concern. Pls.' Opp'n at 13. Plaintiff also tries to link the case to the District of Columbia based on the fact that the case invokes federal statutes that establish national standards for endangered species, which it argues the District of Columbia is "uniquely qualified" to interpret. Pls.' Opp'n at 14. However, as this District has noted before, "precedent in this circuit does not require or even encourage resolution in this forum of ESA and other environmental claims involving national known resources." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 68 (D.D.C. 2003). Thus, Plaintiffs' choice of forum will not be afforded deference "simply because [P]laintiffs bring an ESA claim involving the nationally known Everglades ecosystem." *Id.*

Plaintiffs also fail to provide any evidence that the Corps' disputed decisions were made in the District of Columbia or that Defendant Harvey, whose office is in the District of Columbia, played a role in those decisions. *Compare Trout Unlimited*, 944 F. Supp. at 18 (holding that

because the decision-making process surrounding the controversy occurred in Colorado, not in

the District of Columbia, plaintiffs failed to demonstrate a significant connection between

District of Columbia and the case), *and Sierra Club*, 276 F. Supp. 2d at 67 (holding that the

District of Columbia lacks a connection with the case because the parties' offices in the District

of Columbia is "overshadowed by the lack of evidence that federal officials in this forum played

'an active or significant role' in the decision" at issue), *with Wilderness Soc'y v. Babbitt*, 104 F.

Supp.2d 10, 14 (D.D.C. 2000) (finding a substantial connection between the District of Columbia

and the case because former Secretary Babbitt was personally involved in the disputed actions

and decision-making), *and Greater Yellowstone*, 104 F. Supp. 2d at 128 (finding a sufficient

connection between the District of Columbia and the controversy because the decision to reissue

grazing permits, which the plaintiffs argued would negatively impact the Yellowstone National

Park's bison herd, was made by D.C. officials).  As Defendant argues, the Corps' decision-

makers are located in Florida, not the District of Columbia, and the disputed decisions were

made in Florida.  Def.'s Mem. at 6.  Given the District of Columbia's attenuated relationship to

the case, Plaintiffs' choice of forum will not be given deference.

Regarding the second private interest factor, the defendant's choice of forum, the Court

finds that Defendant has legitimate reasons for preferring the Southern District of Florida, and as

a result, Defendant's choice of forum must be accorded some weight.  The alleged harm to the

snail kite occurs at Lake Okeechobee, in Southern Florida, and the Corps' management of the

lake affects the inhabitants and environment of Southern Florida.  Furthermore, one of the

Plaintiffs, the Florida Wildlife Federation, has its offices and members in Florida.

The third factor to consider, where the action arose, weighs heavily in favor of transfer.

All three of Plaintiffs' counts challenge the Corps' management of Lake Okeechobee and the snail kite, which are both located in Southern Florida.  As discussed above, the Corps' disputed actions and decision-making process took place in Florida, and the Plaintiffs have not pointed to any actions arising in Washington, D.C.

The fourth private interest factor, the convenience of the parties, does not present a valid reason for denying transfer.  Although one of the Plaintiffs, the National Wildlife Federation, and the Defendant are headquartered in the District of Columbia, the other Plaintiff, the Florida Wildlife Federation, is located in Florida, and Defendant has offices in the Southern District of Florida.  Furthermore, Plaintiffs' claims that, as non-profit organizations with limited resources, they will be inconvenienced by having to litigate in Florida, are called into doubt by the fact that they are presently litigating other matters in the Southern District of Florida.  Pls.' Opp'n at 6.  Def.'s Reply at 4–5.  Finally, the fact that Defendant's counsel is located in the District of Columbia does not justify denying transfer because "any inconvenience to [Defendant's counsel] is offset by the fact that they represent the party requesting the transfer." *Northwest Forest Res. Council v. Babbitt*, 1994 WL 908586 at *3 n.6 (D.D.C. Apr. 13, 1994).  Thus, the facts do not support Plaintiffs' argument that the District of Columbia would be a more convenient forum for both parties.

The fifth factor, convenience of the witnesses, may not be relevant to the instant case such that the Court is reluctant to factor it into its analysis.  Because this case involves judicial review of an administrative record, it is not clear that witnesses will be used.  *See Trout Unlimited*, 944 F. Supp. at 18 (holding that witnesses' convenience was not a relevant factor in

8

the analysis because the case involved judicial review of an administrative record located in Colorado).

The sixth factor, the ease of access to sources of proof, weighs in favor of transfer because documents that will comprise the administrative record were created primarily in Florida. *See* Def.'s Mem. at 13; *see also Trout Unlimited*, 944 F. Supp. at 18 (considering the necessity of moving a "voluminous record" absent transfer as a factor in support of transfer).

In sum, after weighing the private interests of the parties, the Court concludes that the factors, particularly the strong connection that Florida has with the case, favor transfer.

B.      *Public Interest Factors*

The Court must also balance public interest factors in determining whether to grant Defendant's Motion to Transfer.  The first public interest factor to be weighed by the Court, the transferee court's familiarity with the governing laws, does not favor either jurisdiction. Defendant notes that there are a few cases pending in the Southern District of Florida that deal with Southern Florida's natural resources, and two cases in particular that deal with preservation of the snail kite.  Def.'s Mem. at 10–11.  Defendant argues that these cases, while not similar enough for consolidation purposes, "underscore the fact [that] Plaintiffs' claims and any requests for relief here must be viewed in conjunction with other ongoing disputes."  Def.'s Reply at 4. However, it is not necessarily true that the presence of other cases on the Southern District of Florida's docket puts it in a better position to decide the case at hand.  As Plaintiffs noted, the District of Columbia has decided dozens of cases involving ESA claims, which illustrates the District of Columbia's familiarity with the laws governing this case.  Pls.' Opp'n at 11.  On the other hand, the fact that this case involves the interpretation of federal statutes does not

automatically make the District of Columbia more competent to decide the case than Florida, as

Plaintiffs allege.  Where plaintiffs' claims are based on federal environmental law, this Court

follows "the principle that the transferee federal court is competent to decide federal issues

correctly." *Sierra Club*, 276 F. Supp. 2d at 70 n.6 (quoting *In re Korean Air Lines Disaster of*

*Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987)).  Thus, both courts are competent to

interpret the federal statutes involved in this case, and there is no reason to transfer or not transfer

based on this factor.

Based on the statistics that Plaintiff presented from U.S. District Court Judicial Caseload

Profile Report, the second public interest factor, the relative congestion of the calendars of the

potential transferee and transferor courts, would weigh in favor of denying Defendant's motion to

transfer.  Pls.' Opp'n at 11–13.  The Southern District of Florida received more filings than the

District of Columbia in 2004 and 2005.  "Federal Court Management Statistics,"

http://www.uscourts.goc/cgi-bin/cmsd2004.pl, http://www.uscourts.goc/cgi-bin/cmsd2005.pl.

However, "congestion alone is not sufficient reason for transfer."  *Starnes v. McGuire*, 512 F.2d

918, 932 (D.C. Cir. 1974).  Indeed, the Supreme Court has emphasized the importance of the

third public interest factor–that "[t]here is a local interest in having localized controversies

decided at home."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).  This Court finds that the

third factor, the local interest in deciding local controversies at home, weighs heavily in favor of

transfer.  To determine whether a controversy is local in nature, the Court must consider a

number of factors, including where the challenged decision was made, whether the decision

directly affected the citizens of the transferee state, the location of the controversy, whether the

issue involved federal constitutional issues rather than local property laws or statutes, whether

10

the controversy involved issues of state law, whether the controversy has some national significance, and whether there was personal involvement by a DC official.  *See Sierra Club*, 276 F. Supp. 2d at 70 (citing *Trout Unlimited*, 944 F. Supp. at 20; *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 41–42 (D.D.C. 2003); *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 154 F. Supp. 2d 10, 16 (D.D.C. 2001); *Greater Yellowstone*, 180 F. Supp. 2d at 129; and *Wilderness Soc'y*, 104 F. Supp. 2d at 17); *see also supra* § III(A).  The Court concludes that the case at hand is local to Florida and is one in which Florida and its residents have a great interest.  While the fact that Plaintiffs' claims invoke federal law, relate to the Everglades ecosystem, and are brought by a national environmental organization suggests that the case has a "national aspect," *see Sierra Club*, 276 F. Supp. 2d at 71, the extent and degree of Florida's interest is indisputable. The management of Lake Okeechobee affects not only the snail kite, which is local to Southern Florida, but also navigation, flood control, agriculture, and municipal water supplies in South Central Florida.  The controversy is located in Southern Florida and directly affects the citizens of Florida.  The Corps' decisions currently challenged by Plaintiffs were made in Florida, and even though the Corps have offices in the District of Columbia, Plaintiffs have not shown that District of Columbia officials were personally involved in those decisions.  As the interests of justice are promoted when a localized controversy is resolved in the region that it impacts, the Court concludes that the final public interest factor supports transfer.

**IV. CONCLUSION**

Based on the Court's analysis of the public and private interest factors, the Court concludes that transfer is appropriate.  Accordingly, the Court shall grant [4] Defendant's Motion to Transfer Venue to the Southern District of Florida.  An Order accompanies this Memorandum Opinion.

Dated:  June 15, 2006


_____
     /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge